IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE EARL THOMPSON,           :

        Plaintiff,              :

vs.                             :       CIVIL ACTION 05-0264-WS-M

GRANTT CULLIVER,                :

        Defendant.              :

<u>REPORT AND RECOMMENDATION</u>

This is an action under 42 U.S.C. § 1983 by an Alabama
prison inmate, proceeding *pro se* and *in forma pauperis*, which has
been referred for report and recommendation pursuant to 28 U.S.C.
§ 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that
defendant Grantt Culliver denied him appropriate medical care and
sufficient conditions of confinement while he was incarcerated at
the W. C. Holman Correctional Facility in Atmore, Alabama.  (Doc.
1 at 5-7).  Plaintiff also alleges that defendant Culliver
transferred him from the Holman facility to another prison in
retaliation for the filing of this lawsuit.  (Docs. 12, 16, and
19).  Plaintiff alleges that the actions or inactions of
defendant Culliver violated the Eighth Amendment prohibition
against cruel and unusual punishment, and as relief, plaintiff
seeks an order that he be "allowed to get in [his] bed to rest
[his] old aching body,"[1] and "for any money."  (*Id.* at 5).

―――――――――――――

[1]The Court notes that plaintiff is no longer housed at the
W.C. Holman Correctional Facility, so any claim for injunctive

Defendant Culliver filed an answer and a special report (Docs. 25 and 26) on May 9, 2007, denying that he violated plaintiff's constitutional rights, and denying that he was deliberately indifferent to plaintiff's needs.  Defendant Culliver also contends that plaintiff has failed to state a claim and that plaintiff's claim for injunctive relief is moot. Additionally, defendant asserts numerous affirmative defenses including qualified immunity, absolute immunity, waiver, estoppel, judicial estoppel, collateral estoppel, res judicata, and/or ratification.  (Doc. 25).  Defendant Culliver also asserts that plaintiff has failed to mitigate his damages, if any. (*Id.*).

On June 7, 2007, this Court entered an Order converting defendant's special report and answer to a motion for summary judgment.  (Doc. 27).  Plaintiff filed a response in opposition to defendants' motion for summary judgment on July 16, 2007. (Doc. 30).  In this response, plaintiff reiterates his initial allegations.  In accordance with the Court's Order, defendant's motion for summary judgment was taken under submission, along

---

relief, such as allowing him to "get in [his] bed" and receive more food and legal help is moot.  *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.) ("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred."), *cert. denied*, 488 U.S. 1046, 109 S. Ct. 876, 102 L. Ed. 2d 999 (1989). Thus, the Court will consider only plaintiff's request for money damages.

with plaintiff's response on July 16, 2007.  After consideration by the Court, it is recommended that defendant's motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of defendant Grantt Culliver and against plaintiff Willie Earl Thompson on all claims.

## I. FACTS

During the period of time around approximately February 11, 2005, while incarcerated at W.C. Holman Correctional Facility ("Holman"), plaintiff claims that he was denied appropriate medical care and sufficient conditions of confinement. Specifically, plaintiff claims that he hurt all day because of his left hip and right ribs; he claims that he cried from tooth pain and that he has a plate in his skull; and he further complains that he is allergic to tobacco smoke and tobacco smokers and that this caused him much discomfort.  (Doc. 1 at 4, 6-7). Plaintiff complains also that he is allergic to many foods, but that he was not served foods that he could eat, namely peanut butter, jello, breads and biscuits.  (Doc. 8 at 3).  Plaintiff complains that he was not fed enough to keep a two year old child alive.  (Doc. 1 at 6).  Plaintiff alleges that, while at Holman, he received disciplinaries for not making his bunk as required of all inmates.  Plaintiff contends that because of his physical ailments, he did not feel like making his bed, and further, he

needed to continue to lie in his bed.

Subsequently, in an amended complaint, plaintiff complains that he had to write his complaint with a three or four inch pencil, and that Warden Culliver would not allow him to ask the inmate assigned to the prison law library to help him with his legal issues.  (Doc. 8 at 1, 3-4).  Further, after plaintiff was transferred to Donaldson Correctional Facility ("Donaldson"), he complained that defendant Culliver had transferred him there in retaliation for the filing of this complaint, asserting that he has "enemies" at Donaldson relating back to plaintiff's killing of a fellow inmate in a county jail.  (Docs. 8 and 12).  Plaintiff contends that his victim's brothers and cousins are housed at Donaldson, and that he is fearful of being there.  Notably, despite his numerous complaints of insufficient nutrition and medical attention while at Holman, plaintiff further states that he wants to be transferred back to Holman because "[t]here med [sic] and dietary reasons I have [sic] to be transfer [sic] back to Holman."  (Doc. 12 at 2).

According to defendant Culliver, plaintiff's numerous requests regarding medical care, additional food and increased ventilation were accommodated as much as possible while plaintiff was incarcerated at Holman.  Plaintiff was seen numerous times by prison medical staff, and received medication.  (Doc. 26, Ex. A at 1-2).  Documented efforts were made in an attempt to provide

4

plaintiff a comfortable environment at Holman.  (Doc. 26 at 5-6, Ex. A at 2-3).  Further, regarding plaintiff's claims that he received disciplinaries for being in his bed, defendant Culliver contends that plaintiff was required, as all inmates housed in segregation, to be out of his bed before 7:00 a.m.  (*Id.*).  However, defendant Culliver notes that plaintiff fails to disclose to the Court that he was allowed to lie on his bed after it was made.  (Doc. 26 at 7, Ex. A at 2).

With regard to plaintiff's complaints of poor nutrition, defendant Culliver notes that plaintiff did indeed lose some weight while incarcerated because he refused to eat many of the foods served him.  (Doc. 26, Ex. A at 2).  However, the medical staff was unable to verify that plaintiff actually had an allergy to those foods.  Further, plaintiff was provided additional foods, as well as a meal supplement after his documented weight loss.  (*Id.*).

Regarding plaintiff's complaint that defendant Culliver prevented him from receiving legal assistance from the inmate law clerk, defendant Culliver avers that it is not the inmate law clerk's duty to help inmates with their legal issues or in the preparation of their legal materials.  (*Id.* at 2-3).  The law library inmate's job is limited to picking up request slips for law books and supplies from the inmates located in segregation and subsequently delivering the same to the inmate whose request

has been filled.  (Doc. 26 at 7-8, Ex. A at 2-3).

Finally, as to plaintiff's claim that defendant Culliver transferred him to Donaldson in retaliation for this lawsuit, defendant Culliver first points to the fact that it was plaintiff who requested a transfer from Holman.  (Doc. 26 at 8, Ex. A at 4).  Moreover, defendant Culliver notes that plaintiff would have had "enemies" at any facility in which he could have been housed. Notably, defendant Culliver adds that prior to plaintiff's filing this complaint in May of 2005, plaintiff had filed other lawsuits, none of which led him to being transferred.  (Doc. 26 at 9).

As referenced above, plaintiff is seeking monetary damages and injunctive relief.  Also, as discussed previously, as plaintiff's claims for injunctive relief are moot, the Court is only considering his claim for monetary damages.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed. R. Civ. P.* 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at 325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Liberty Mut. Fire Ins. Co. v. Sahawneh*, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing *Anderson*, 477 U.S. at 249-50).

III. DISCUSSION

In this action, plaintiff seeks redress for alleged constitutional deprivations pursuant to 42 U.S.C. § 1983.[2] Specifically, plaintiff alleges that defendant Culliver's deliberate indifference to his serious medical needs while incarcerated at Holman, defendant's deliberate indifference to plaintiff's living conditions, defendant's intentionally depriving plaintiff of inmate legal services, and defendant's retaliatory transfer of plaintiff violated his rights under the

---

[2]Plaintiff does not specify whether he is suing defendant in his official and/or individual capacity.  Thus, the Court will consider both.  As a state official, defendant is absolutely immune from suit for damages in his official capacity.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Additionally,"[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Having determined herein that plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Eighth Amendment.[3]  For the reasons set forth below, the Court finds that plaintiff's allegations fail to establish any constitutional violation by defendant.  Thus, it is recommended that defendant's motion for summary judgment be granted.

<u>Denial of Adequate Medical Care</u>

As discussed above, in this action, plaintiff alleges that defendant was "deliberately indifferent" to his serious medical needs in violation of the Eighth Amendment by failing to provide proper medical treatment, as well as proper nutrition, and proper ventilation for his alleged allergy condition during his incarceration at Holman.  (Doc. 1).  Specifically, plaintiff alleges that he has endured pain in his left hip and right ribs, tooth pain, and that he has a plate in his skull.  Plaintiff further complains that he is allergic to tobacco smoke and tobacco smokers and that this caused him much discomfort.  (Doc. 1 at 4, 6-7). Plaintiff complains also that he is allergic to many foods, but that he was not served foods that he could eat, namely peanut butter, jello, breads and biscuits.  (Doc. 6 at 3-10, 13).

The Eighth Amendment provides that, "[e]xcessive bail shall

---

[3]Although plaintiff asserts his claim of retaliation under the Eighth Amendment, this claim would actually fall within the parameter of the First Amendment.  This point, however, is moot, as plaintiff has failed to state a constitutional claim of retaliation.

not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff must first demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) (quoting *Hudson v. McMillian*,

10

503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)).
"[A] 'serious' medical need is one that has been diagnosed by a
physician as mandating treatment or one that is so obvious that
even a lay person would easily recognize the necessity for a
doctor's attention." *Id.* at 1187 (quoting *Laaman v. Helgemoe*, 437
F. Supp. 269, 311 (D.N.H. 1977)).   As noted by the Ninth
Circuit, "[a] 'serious' medical need exists if the failure to
treat a prisoner's condition could result in further significant
injury or the 'unnecessary and wanton infliction of pain.'"
*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting
*Estelle*, 429 U.S. at 104, 97 S. Ct. at 291)(overruled on other
grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136
(9th Cir. 1997)).

In order to meet the required subjective element of an
Eighth Amendment denial of medical care claim, a plaintiff must
demonstrate "deliberate indifference" to a serious medical need.
*Farrow*, 320 F.3d at 1243.

> In *Estelle*, the Supreme Court established
> that "deliberate indifference" entails more
> than mere negligence.  *Estelle,* 429 U.S. at
> 106, 97 S. Ct. 285; *Farmer,* 511 U.S. at 835,
> 114 S. Ct. 1970.  The Supreme Court clarified
> the "deliberate indifference" standard in
> *Farmer* by holding that a prison official
> cannot be found deliberately indifferent
> under the Eighth Amendment "unless the
> official *knows of* and *disregards an excessive
> risk to inmate health or safety*; the official
> must both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also

11

> draw the inference." *Farmer,* 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added).  In
> interpreting *Farmer* and *Estelle,* this Court
> explained in *McElligott* that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> *McElligott,* 182 F.3d at 1255; *Taylor,* 221
> F.3d at 1258 (stating that defendant must
> have subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

*Farrow*, 320 F.3d at 1245-46 (emphasis in original).

For purposes of this analysis, the Court assumes, without deciding, that plaintiff has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim.  The Court turns its focus, instead, to plaintiff's claim that defendant Culliver was deliberately indifferent to his serious medical need for treatment, *i.e.*, medical treatment, nutrition, ventilation, for his alleged health problems.

The Court has reviewed plaintiff's very voluminous medical records compiled primarily during his incarceration at Holman. (Doc. 31).  From all accounts, plaintiff made many complaints while at Holman, but a thorough review of his records reveals that these complaints were sufficiently answered.  While housed at Holman, plaintiff complained of the following medical ailments:  allergies, having a plate in his skull, two painful teeth, left hip pain, right rib pain, and most frequently, hunger

pains.  (*Id.*).  In response, plaintiff received a tremendous number of visits with the nursing staff and doctors, medications, blood tests, x-rays, eye care, dental care, and extra food, as well as dietary supplements.  (*Id.*).  Further, while incarcerated at Holman, plaintiff received the following medications: Motrin, Tylenol, Pepto-Bismol, Zantac, Tums, Flexeril, Drixoral, Afrin, Ranitidine HCl, Sudafed, Chlorpheniramine Maleate CR, and the diet supplement Ensure.  (Doc. 31, Ex. 1 at 15, 34-35, 37, and Ex. 2 at 15, 20-21, 24-25, 29, 39).

Not only did plaintiff receive medical care and medications, he received additional food, despite a failure to ever prove a true medical need for such food.[4]  Plaintiff appears to have regularly, and even obsessively, requested additional food, claiming that he was allergic to almost all foods except peanut butter, bread, jello, pudding, coffee and butter.  At times, Holman medical staff responded by approving double portion trays with peanut butter for plaintiff, or a couple of peanut butter sandwiches and milks along with plaintiff's evening tray,[5]

_____

[4]The Court notes that a review of plaintiff's medical records, while showing a fluctuation in his weight, never revealed a weight which was considered unhealthy for plaintiff's age and height.  (Doc. 31 at 2-3, 5).  Moreover, although plaintiff claims that he is allergic to most foods, he has offered nothing but his own opinion to support that claim.

[5]Despite being served special food such as peanut butter sandwiches and milk, in addition to his regular meals, plaintiff makes negative allegations about the black officers at Holman, stating once that "[o]ne can see why Negroes are so far behind

13

although there is no medical evidence that plaintiff truly had a
medical reason for requiring the additional food.  (Doc. 31, Ex.
2 at 72).

In response to plaintiff's complaints of allergies to
cigarette smoke, plaintiff's records reflect that Holman staff
made efforts to move plaintiff around, placing him on top bunks,
near windows and fans.  (Doc. 31 at 44-45).  In February 2005,
plaintiff wrote a letter to defendant Culliver again complaining
of the air in his cell.  (Doc. 1 at 8).  The Court notes
defendant Culliver's response which stated that on February 4,
2005, at 1:15 a.m., defendant himself walked through plaintiff's
dorm and actually walked into plaintiff's area, where he saw that
the fan was turned off, the heat was on, but the room was
pleasant.  Defendant Culliver wrote that plaintiff was sleeping
quietly, and in his note to plaintiff, stated that "we have been
through this so many times that it is not even funny."  (Doc. 1
at 10).

Having considered the evidence in this action in the light
most favorable to plaintiff, the Court finds that plaintiff has
failed to establish an Eighth Amendment violation by the
defendant with regard to plaintiff's health and physical comfort.
As discussed above, in order to satisfy the subjective element of
an Eighth Amendment claim, plaintiff must show that defendants

_____

other races in the U.S."  (Doc. 6 at 3).

knew of and disregarded "an excessive risk to [his] health or safety." *Farrow*, 320 F.3d at 1245.   Stated differently, plaintiff must show that defendant had "subjective knowledge of a risk of serious harm," that defendant disregarded that risk, and that defendant did so "by conduct that is more than mere negligence." *Id.*

The record here is devoid of evidence that defendant had subjective knowledge of, and disregarded, a risk of serious harm to plaintiff from his alleged problems with his ribs, hips, teeth, allergies, and hunger.   To the contrary, the record shows that Holman medical staff constantly monitored and treated plaintiff with medications, tests, and additional food and dietary supplements as was deemed necessary.   There is no evidence that defendant was deliberately indifferent to any of plaintiff's medical problems, and in fact, following plaintiff's transfer to Donaldson, plaintiff himself actually acknowledged that he wanted to go back to Holman for medical reasons.   (Doc. 12 at 2).

The Eleventh Circuit has recognized that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).   The fact that a plaintiff may disagree with the efficacy of the treatment recommended or simply prefer a different course of treatment does not state a valid claim of

15

medical mistreatment under the Eighth Amendment. *See*, *e.g.*,
*Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question
of whether governmental actors should have employed additional
diagnostic techniques or forms of treatment 'is a classic example
of a matter for medical judgment' and therefore not an
appropriate basis for grounding liability under the Eighth
Amendment.") (quoting *Estelle*, 429 U.S. at 107); *Del Muro v.
Federal Bureau of Prisons*, 2004 WL 1542216, *4 (N.D. Tex. 2004)
(unpublished) ("[i]t is well-established that a difference in
opinion or a disagreement between an inmate and prison officials
as to what medical care is appropriate for his particular
condition does not state a claim for deliberate indifference to
medical needs.").

Moreover, it is well established that "[s]imple medical
malpractice . . . does not rise to the level of a constitutional
violation." *Waldrop*, 871 F.2d at 1035.  Thus, even if the Court
were to assume that, at times, plaintiff had been incorrectly
diagnosed and/or treated by Holman medical staff, of which there
is no evidence, Eighth Amendment liability cannot be grounded on
"mere negligence." *Farrow*, 320 F.3d at 1245.  While the Court
recognizes that plaintiff may have experienced chronic allergy
problems, and on occasion other aches and pains, there is no
evidence that defendant refused to treat him or that he engaged
in "deliberately indifferent" delay in treating any of these

16

medical problems.

Inasmuch as plaintiff's own medical records establish that he received extensive medical treatment for each of his medical complaints, plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation.  Thus, defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim regarding inadequate medical care.

<u>Denial of Sufficient Conditions of Confinement</u>

Plaintiff claims that defendant Culliver had disciplinaries written on him because plaintiff would regularly fail to be out of the bed by 7:00 a.m., as required in segregation.  Plaintiff claims that he was physically unable to stay out of his bed.  Also, plaintiff, as discussed above, complains that the cigarette smoke which he was exposed to aggravated his allergies.  Further, plaintiff contends that his rights were violated by defendant's not allowing him to seek legal help from the inmate law clerk.  Plaintiff claims that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment.  (Doc. 4 at 5-6; doc. 42).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers*, 475 U.S. 312, 318, 106 S. Ct. 1078, 1083, 89 L. Ed. 2d 251 (1986); *see also Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401,

1408-09, 51 L. Ed. 2d 711 (1977).  Specifically, the Eighth
Amendment "prohibits the unnecessary and wanton infliction of
pain. . . , the infliction of pain totally without penological
justification. . . , [and] the infliction of punishment grossly
disproportionate to the severity of the offense." *Ort v. White*,
813 F.2d 318, 321 (11th Cir. 1987)(citing *Rhodes v. Chapman*, 452
U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981)).

     Further, "[t]he 'cruel and unusual punishments' standard
applies to the conditions of a prisoner's confinement." *Chandler
v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing *Rhodes*,
452 U.S. at 345-46, 101 S. Ct. at 2398-99).  The Eighth
Amendment, however, "does not authorize judicial reconsideration
of 'every governmental action affecting the interests or well-
being of a prisoner.'" *Campbell v. Sikes*, 169 F.3d 1353, 1362
(11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319,
106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)).  Furthermore,
"the Constitution does not mandate comfortable prisons." *Rhodes*,
452 U.S. at 349, 101 S. Ct. at 2400.  "If prison conditions are
merely 'restrictive and even harsh, they are part of the penalty
that criminal offenders pay for their offenses against society.'"
*Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101
S. Ct. at 2399).  Prison conditions violate the Eighth Amendment
only when they "involve the wanton and unnecessary infliction of
pain." *Id.*

18

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200, 109 S. Ct. at 1005-1006 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need. *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)). A prisoner must prove the denial of "the minimal civilized measure of life's necessities." *Chandler*, 379 F.3d at

19

1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).  The

challenged condition must be "extreme." *Id.*  Although an inmate

"need not await a tragic event" before seeking relief, *Helling v.*

*McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d

22 (1993), he must at the very least show that a condition of his

confinement "pose[s] an unreasonable risk of serious damage to

his future health" or safety, *id.* at 35, 113 S. Ct. at 2481.

Moreover,

> the Eighth Amendment requires more than a
> scientific and statistical inquiry into the
> seriousness of the potential harm and the
> likelihood that such injury to health will
> actually be caused by exposure to [the
> challenged condition of confinement].  It
> also requires a court to assess whether
> society considers the risk that the prisoner
> complains of to be so grave that it violates
> contemporary standards of decency to expose
> *anyone* unwillingly to such a risk.  In other
> words, the prisoner must show that the risk
> of which he complains is not one that today's
> society chooses to tolerate.

*Id.* at 36, 113 S. Ct. at 2482.

Second, the inmate must prove that the prison official was

subjectively "deliberately indifferent" to a substantial risk of

harm.  *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S. Ct. 1970,

128 L. Ed. 2d 811 (1994).  "[A] prison official cannot be found

liable under the Eighth Amendment for denying an inmate humane

conditions of confinement unless the official knows of and

disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838, 114 S. Ct. at 1979.   In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Farmer,* 511 U.S. at 844, 114 S. Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.*, 268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original).

Having set forth the general legal principles applicable to plaintiff's claim, the Court now turns to the facts.   As the basis for his Eighth Amendment unconstitutional conditions of confinement claim, plaintiff merely contends that he has on occasion been subjected to cigarette smoke, received disciplinaries for not making his bed, and denied legal assistance from the inmate law library clerk. (Doc. 1 at 4, 7; doc. 8 at 3-4).

There has been sufficient evidence presented that defendant made genuine attempts to assist plaintiff in avoiding the cigarette smoke.  (Doc. 26, Ex. A at 2; doc. 31 at 44-45).

21

Defendant Culliver avers that while plaintiff did receive
disciplinaries for not getting up and making his bed, plaintiff
was aware that he would have been allowed, and in fact was
allowed, to lie back down in his bed after it was made.  (Doc.
26, Ex. A).  Additionally, defendant Culliver notes that the
inmate who works in the law library enters the segregation unit
to pick up requests and deliver those supplies to the inmates,
not to assist with legal problems.  It is not the duty of the
clerk in any way to assist the inmates with their legal issues.
(Doc. 26, Ex. A at 3).

     Under the circumstances of this action, plaintiff's
allegations related to his treatment at Holman do not amount to
the denial of a basic human need, *see DeShaney*, 489 U.S. at 199-
200, nor do they evidence a deliberate indifference to a
substantial risk of serious harm to plaintiff's health or safety.
*See Farmer*, 511 U.S. at 837-38.  Plaintiff has simply not alleged
prison conditions which "involve the wanton and unnecessary
infliction of pain." *Rhodes*, 452 U.S. at 347, 101 S. Ct. at
2399.  Considering the evidence in the light most favorable to
plaintiff, the question is whether a jury could reasonably
conclude that defendant violated Plaintiff's rights under the
Eighth Amendment.  Under the circumstances of this action, the
Court finds that plaintiff's allegations fail to establish an
Eighth Amendment constitutional violation.

<u>Retaliation Claim</u>

Plaintiff's final claim is one of alleged retaliation.[6] Plaintiff contends that defendant Culliver transferred him from the Holman Correctional Facility to the Donaldson Correctional Facility in retaliation for the filing of this lawsuit.  After a review of this action, the Court has determined that this claim, as each of plaintiff's previous claims, fails.

"The First Amendment protects inmates from retaliation by prison officials for filing lawsuits or administrative grievances."  *Redd v. Conway*, 2005 WL 3528932, *4 (11th Cir. 2005) (citing *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997)).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct

---

[6]Although plaintiff uses the word "conspired" several times in his numerous pleadings, he fails to assert any of the required elements of a conspiracy.  It almost seems that plaintiff made a few references to conspiracy as an afterthought in his lengthy, rambling pleadings.  In order to state a conspiracy claim under § 1983, a plaintiff must show the parties reached an understanding to violate his federal rights.  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.), *cert. denied*, 500 U.S. 932, 111 S. Ct. 2053, 114 L. Ed. 2d 459 (1991).  "The linchpin for conspiracy is agreement, which presupposes communication."  *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1990)). Plaintiff has failed to allege any facts to show there was a communication or an agreement.  Moreover, even had plaintiff shown such a communication and agreement, there have been no violations of plaintiff's constitutional rights.  Therefore, this Court is not considering this brief reference to a "conspiracy" to be an actual claim.  Even assuming that it was considered a claim, it would clearly fail.

constitutional right." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech ." *Id.*

"To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." *Flynn v. Scott*, 2006 WL 1236718, *5 (M.D. Ala. 2006) (citing *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003)).

> An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . . Merely alleging the ultimate fact of retaliation, however, is insufficient. . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . . If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of

24

> production, not of persuasion, and thus does
> not have to persuade a court that he or she
> actually was motivated by the reason
> advanced. . . . Once the prison official
> satisfies this burden of production, the
> inmate then has the burden of persuading the
> court by sufficient evidence that the
> proffered reason for the adverse decision is
> a pretext for retaliation.

*Flynn*, 2006 WL 1236718 at 5-6 (citations omitted).  A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred *but for* the retaliatory motive." *Hempstead v. Carter*, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing *Jackson v. Fair,* 846 F.2d 811, 820 (1st Cir. 1988)).  "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation."  *Id.* (citing *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)).  However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'"  *Id.* (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)).

It has been held that "[f]ederal courts must 'carefully scrutinize retaliation claims'" and that "[c]arefully scrutinizing such claims is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Flynn*, 2006 WL 1236718, *5 (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995))

(addressing claims of retaliatory disciplinaries).  "This is so because virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.")."  *Id.*

> In assessing retaliation claims, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner,* 515 U.S. 472, 487, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (1995)).  And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." *Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S. Ct. 1584, 1596-97, 140 L. Ed. 2d 750 (1998) (internal quotation marks omitted).  Indeed, while mindful that Plaintiff may not be held to a heightened burden of proof, *see Crawford-El,* 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions and actions of prison officials and "the ease with which claims of retaliation may be fabricated."

*Hempstead*, 2006 WL 2092383, *6 (citations omitted).

In this action, even assuming that plaintiff has carried his initial burden of presenting prima facie proof of retaliation,

defendant has, in turn, met his burden of demonstrating that the prison transfer about which plaintiff complains resulted in actuality from plaintiff's own request.  Initially, the Court notes that a prison transfer, on its own, does not appear to be an adverse action.  Further, the evidence shows that plaintiff requested to be transferred out of Holman, and was advised that he would have enemies at any prison in which he could be housed, as plaintiff is a convicted murderer.  Moreover, plaintiff has in the past filed lawsuits against defendant, but only now has been transferred out of Holman.  (Doc. 26, Ex. A).  Plaintiff offers only his belief that defendant's action was retaliatory, a far cry from the required showing that the prison transfer would not have occurred "but for the retaliatory motive."  *Hempstead*, 2006 WL 2092383, *5-6.

As this Court must carefully scrutinize retaliation claims arising from prison administration and approach such claims "with skepticism and particular care," *Hempstead*, 2006 WL 2092383, * 6, plaintiff's conclusory allegations are insufficient to show that the legitimate reasons proffered by defendant are pretextual. Given the absence of any evidence that plaintiff would not have been transferred "but for" the purpose of retaliation, plaintiff's retaliation claim fails as a matter of law.

<u>CONCLUSION</u>

Based on the foregoing, it is recommended that the motion

27

for summary judgment of defendant, Warden Grantt Culliver, be

granted and that plaintiff's action be dismissed with prejudice.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to

object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 24th day of August, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE